IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CARLENE D. LANGLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:03-CV-0128 |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
TO AFFIRM THE DECISION OF THE COMMISSIONER**

Plaintiff CARLENE D. LANGLEY brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant JO ANNE BARNHART, Commissioner of Social Security (Commissioner), denying plaintiff's applications for disability benefits and supplemental security income benefits (SSI). For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
PROCEEDINGS

On November 6, 2000, plaintiff filed an application for Disability Insurance Benefits alleging she became unable to work because of a disabling condition on November 1, 1999.[1] (Tr.

---

[1]On her application, plaintiff remarked: "The blank years on the earnings statement represent years I was in school. I have reviewed the summary earnings statement and the earnings are correct as posted." (Tr. 73).

72-75. As illnesses, injuries or conditions limiting her ability to work, plaintiff alleged "rt. knee surgery 12/77, lt. knee surgery 11/83, closed head injury & post concussion syn. 5/85, MVA lumbar sprain/strain Feb. 1991, lt. shoulder surgery 12/93, fibromyalgia & definite rheumatoid arthritis." (Tr. 76x). Plaintiff alleged her conditions first bothered her in 1971 and limit her ability to work because they cause "severe pain, limited motion, extreme fatigue, memory problems, inability to concentrate/maintain focus, problems with daily living skills." Plaintiff acknowledged she was able to continue working after her conditions first bothered her but that she began to work fewer hours, made job-related changes in that her employer hired an aide to help with lifting, and changed her job duties by becoming a case manager. Plaintiff states she eventually became nonfunctional because of memory and concentration problems. Plaintiff explained she stopped working on November 1, 1999 due to her inability to focus on tasks for more than 10 or 15 minutes. Plaintiff noted she completed 4 or more years of college,[2] and identified her past work as a programmer/systems analyst (1986-1989), a restaurant delivery driver (1988-1991), a telephone solicitor (1990), a physical therapist assistant (1993-1999), and a case manager (1995-1999). (Tr. 76dd, 76o, 76y, 76mm). At the time she filed her application, plaintiff was 43-years-old. (Tr. 72).

On March 22, 2001, the SSA, identifying plaintiff's primary diagnosis as "rheumatoid arthritis" and secondary diagnosis as "fibromyalgia," denied plaintiff benefits determining plaintiff's condition was not severe enough to keep her from working.[3] (Tr. 24-25; 44-48; 189-94).

---

[2]Plaintiff obtained her BS degree in social work/psychology in 1979, her AAS degree in computer information systems in 1985, and her AAS degree in physical therapy assistance in 1993. (Tr. 76rr)

[3]In denying disability insurance benefits, the SSA explained, "We have determined that your condition was not disabling on any date through 03/31/2000, when you were last insured for disability benefits. . . . You said you were disabled because of fibromyalgia, rheumatoid arthritis, knee problems, back problems, shoulder problems and an old head injury. Reports show that you have some difficulty due to rheumatoid arthritis and fibromyalgia. This causes you some pain and discomfort. You also said you were disabled because of memory problems. Although you are somewhat depressed, there are no signs of a severe mental illness. Although you said you had many limitations, the evidence does not show that your ability to perform basic work

Plaintiff, represented by an appointed non-attorney representative, requested the SSA reconsider its initial determination, explaining she did not agree with the determination because she is "unable to engage in any SGA due to [her] fibromyalgia, chronic fatigue, rheumatoid arthritis, myofacial pain, osteoarthritis in knees and [] problems with concentration." (Tr. 43). On July 5, 2001, the SSA, again identifying plaintiff's primary diagnosis as "rheumatoid arthritis" and her secondary diagnosis as "fibromyalgia," denied plaintiff benefits upon reconsideration.[4] (Tr. 22-23, 39-42, 185-88).

On August 23, 2001, plaintiff, through her representative, requested a hearing before an Administrative Law Judge ("ALJ"), explaining she disagreed with the determination on reconsideration because she is "unable to engage in any SGA due to [her] rheumatoid arthritis, fibromyalgia with chronic fatigue, myofacial pain, osteoarthritis in knees, anxiety and depression." (Tr. 28). On June 26, 2002, the ALJ conducted an administrative hearing in this case. (Tr. 195-233). On September 19, 2002, the ALJ rendered an unfavorable decision, finding plaintiff not disabled at any time through the date of the decision. (Tr. 7-16).

In his decision, the ALJ noted plaintiff was 45-years-old, had a college education, and past work as a computer programmer, delivery driver, social worker, and physical therapy assistant. (Tr. 11). The ALJ noted plaintiff alleged she became disabled on November 1, 1999, due to knee

---

activities was as limited as you indicated. Your overall medical condition may have caused some restrictions. However, this condition did not prevent you from performing your previous job as a telephone census worker as you described it. This decision is through 03/31/2000, when your period of coverage ended. (Tr. 48).

[4]In denying disability benefits, the SSA explained, "We have determined that your condition was not disabling on any date through 3/31/00, when you were last insured for disability benefits. In deciding this, we studied your records (including the medical evidence and statements in file) and we considered your age, education, training, and work experience in determining how your condition affected your ability to work. You said you were disabled because of right and [left] knee surgeries, lumbar sprain and strain, left shoulder surgery, fibromyalgia, rheumatoid arthritis, myofacial pain syndrome, osteoarthritis of the knees, chronic fatigue, a closed head injury, and concentration problems. However, your symptoms, during your period of coverage, were not severe enough to be considered disabling under Social Security guidelines. Although you said you had these conditions, the evidence does not show that your ability to perform basic work activities was as limited as you indicated. Your overall medical condition may have caused some restrictions. However, this condition did not prevent you from performing your previous job as a telephone-census worker as you described it. This decision is through 3/31/00, when your period of coverage ended." (Tr. 42).

surgeries, a head injury, a lumbar strain and fibromyalgia. The ALJ further noted plaintiff was insured for disability benefits through March 31, 2000 and, thus, must establish disability on or prior to that date. (Tr. 11, 15). The ALJ noted plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 1, 1999, even though she had worked on a contract basis as a social worker.[5] (Tr. 11, 15).

In his decision, the ALJ found the medical evidence indicated plaintiff has impairments of (1) degenerative arthritis in the right knee, (2) fibromyalgia diagnosed from multiple tender points, (3) a history of head injury with negative CT of head in October 2000, and (4) an adjustment disorder with depressed mood. (Tr. 12). The ALJ found these impairments, *in combination*, were severe within the meaning of the Regulations, but that such impairments were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ specifically referenced sections 11.00ff, 12.04, and 14.09, stating reasons as to why plaintiff's impairments of rheumatoid arthritis, adjustment disorder, and fibromyalgia did not meet the listings set forth under those sections. (Tr. 12, 15).

In his decision, the ALJ next cited certain inconsistencies which he found eroded plaintiff's credibility, *viz.*, her failure to report income from 1996 to 1999 even though she acknowledged working until October 1999, as well as her testimony that her earnings were too low to require the filing of taxes for those years despite her former employer's testimony that she was earning $40,000 in 1997 and continued to work for her until November 2000 in an office job on a contract basis.[6]

---

[5]The ALJ stated that even though plaintiff worked until November 2001 [sic], due to her failure to report her earnings, he could not conclude that this work constituted substantial gainful activity. (Tr. 15).

[6]In his Findings, the ALJ found plaintiff's allegations regarding her limitations were not totally credible for the reasons stated in the body of the decision.

The ALJ identified inconsistencies in certain medical records (including a record from plaintiff's October 2000 motor vehicle accident and a February 23, 2001 consultative examination), reviewed plaintiff's medications and their lack of side-effects, recited her activities of daily living, and noted records from plaintiff's treating physician indicating her joint swelling was controlled by medication and that she was stable from a musculoskeletal standpoint.  (Tr. 13).  The ALJ determined plaintiff retained the residual functional capacity (RFC) to perform sedentary work with the ability to alternate sitting and standing.  As support for his RFC determination, the ALJ cited plaintiff's ability to lift 10 pounds occasionally, and her treating physician's statements that her condition is stable on her current medications.

The ALJ determined that, based on the testimony of the vocational expert (VE), plaintiff was no longer capable of performing her past relevant work as it is presently performed.[7]  (Tr. 13, 15).  The ALJ noted plaintiff was 45 years old, defined as a younger individual, with more than a high school education, but with no transferable skills.  (Tr. 14, 15).  The VE testified a hypothetical individual with plaintiff's RFC, specific work restrictions, age, education and past relevant work experience would be capable of making a vocational adjustment to other work, *viz.*, surveillance system monitor (sedentary, unskilled), taxi cab starter (sedentary, semi-skilled), and information clerk (sedentary, semi-skilled).  The ALJ concluded that, based on the testimony of the VE, and considering plaintiff's age, educational background, work experience, and RFC, she is capable of performing a limited range of sedentary work that exists in significant numbers in the national economy.  The ALJ thus concluded plaintiff was not under a disability as defined in the Social

---

[7]The ALJ stated that the VE "testified that the claimant could perform her job as a computer programmer with the limitations outlined above, but that the job had changed from the job she performed in the late 1980s" and that "[s]he would no longer have the skills necessary to perform this work as it is currently performed."

Security Act at any time through the date of his decision.

In her request for review of the ALJ's decision, plaintiff argued, "The ALJ did not fully consider all my disabilities and/or restrictions. The job base is not adequate for me to engage in any SGA." (Tr. 6). Upon the Appeals Council's denial of plaintiff's request for review on April 4, 2003, the ALJ's determination that plaintiff was not under a disability became the final decision of the Commissioner. (Tr. 3-5). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices"

or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

### III.
### MERITS

Plaintiff's brief in support of his application presents the following issues for review:

1. Whether the ALJ erred when he determined plaintiff did not have a listed impairment;

2. Whether the finding by the ALJ that petitioner retains the residual functional capacity (RFC) to perform sedentary work with the option of sitting or standing was supported by substantial evidence.

    A. Whether the Commissioner has the burden of showing, at Step 5, that plaintiff has the RFC to perform SGA and, if so, whether that burden was met;

    B. Whether the ALJ cited sufficient evidence to support the RFC finding in addition to his determination as to plaintiff's credibility; and

    C. Whether the ALJ's determination as to plaintiff's credibility was properly supported.

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis. Therefore, this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform other work that exists in significant numbers in the national economy, and whether the proper legal standards were applied in reaching this decision.

A.
## Listed Impairment

Plaintiff argues the ALJ erred because he failed to find plaintiff's arthritis met or medically equaled the listed impairment set forth in Listing 14.09, *Inflammatory arthritis*. To meet Listing 14.09, as relevant here, plaintiff must show she (1) has a history of joint pain, swelling and tenderness, and (2) signs on current physical exam of joint inflammation or deformity, (3) in two or more major joints, (4) resulting in an inability to ambulate effectively, <u>or</u> (4) an inability to perform fine and gross movements effectively. *Major joints* refer to the major peripheral joints, which are the hip, knee, shoulder, elbow, wrist-hand, and ankle-foot. Section 14.00B6a. The *inability to ambulate effectively* on a sustained basis can be for any reason, including pain associated with the underlying impairment, but the inability to ambulate effectively must have lasted, or be expected to last, for at least twelve (12) months. Section 1.00B2a. Section 1.00B2b(1) defines the *inability to ambulate effectively* as:

> [A]n extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning [] to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

Subsection (2) further explains that to ambulate effectively:

> [I]ndividuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment. . . . Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and

of itself, constitute effective ambulation.

(emphasis added).

As support for her argument that her arthritis met a listing, plaintiff cites the Court to her February 23, 2001 consultative medical examination by Dr. Charles Reynolds. (Tr. 96-100). Upon physical examination, Dr. Reynolds found the range of motion of both of plaintiff's knees was 160, found both ankles "okay," and found plaintiff's wrists, PIP joints, and MP joints to be tender. Dr. Reynolds found plaintiff's motor exam revealed a "slow gait" and that she used a cane for balance. Plaintiff's deep tendon reflexes were normal. Lab and x-ray revealed plaintiff was negative for rheumatoid arthritis, but that she had degenerative arthritis in her right knee. In his assessment, Dr. Reynold's found plaintiff handled objects "okay," seemed to have a good grip, could lift 20 lbs. and carry 15 lbs., could walk one block, and could stand 10 minutes, and sit 15 minutes. Dr. Reynolds found joint enlargement of plaintiff's right knee, but no instability, subluxation, or circulatory defects. He noted plaintiff's gait was slow and that she used a cane for balance, but that she could heel to toe and tandem walk, squat, and hop on one foot. Dr. Reynold's diagnoses were: (1) rehumatoid arthritis, by history; (2) fibromyalgia, by history; (3) knee pain bilaterally from degenerative arthritis; (4) back pain from degenerative arthritis; and (5) shoulder pain from previous surgery.

The Commissioner argues the ALJ did not err in finding plaintiff's arthritis does not satisfy a listing because the medical evidence, particularly Dr. Reynold's evaluation, does not show (1) two or more major joints have joint inflammation or deformity, and (2) does not show plaintiff cannot ambulate effectively. In her reply, plaintiff argues two or more major joints are affected by her arthritis, to wit: her right knee (deformity) and both wrists (joint inflammation). She also argues

the medical record of Dr. Reynold's demonstrates an inability to ambulate effectively in that it noted (1) a slow gait, and (2) that plaintiff used a cane for balance.

Contrary to plaintiff's argument, the medical reports in the record, including the consultative exam by Dr. Reynolds, simply do not reflect that plaintiff was not able to *ambulate effectively* to the degree required. That term is defined by the Social Security regulations as an "extreme limitation of the ability to walk." Section 1.00B2b(1). Nor did such reports meet the criteria of the stated examples of ineffective ambulation in that subsection. There are no such statements or objective findings in the medical reports of record to support such a functional limitation. Plaintiff's degenerative arthritis in her right knee resulting in joint enlargement, bilateral knee pain resulting from degenerative arthritis, tender wrists, and use of a cane for balance,[8] do not establish that plaintiff cannot *ambulate effectively* as that term is defined by the regulations. Further, plaintiff testified she could walk 200 - 300 yards, a sufficient distance to be able to carry out activities of daily living. (Tr. 210, 213). At this stage of the sequential process (Step 3), it is plaintiff's burden to establish that her impairments met or were equal to this listing. The Commissioner's finding that plaintiff's condition did not meet or medically equal a listed impairment under Listing 14.09 is supported by sufficient substantial evidence and is not subject to reversal on this review.

B.
Plaintiff's Residual Functional Capacity

Plaintiff next argues the finding by the ALJ that she retained the residual functional capacity (RFC) to perform a limited range of sedentary work was not supported by substantial evidence. Plaintiff asserts three (3) bases for contending the RFC finding is not supported by substantial

---

[8] Plaintiff testified she uses a cane "most of the time." (Tr. 209).

evidence.

First, plaintiff argues the ALJ did not carry his burden, at Step 5, of showing plaintiff retains the RFC to perform substantial gainful employment (SGA).  Specifically, plaintiff states that at Step 4, plaintiff has the "burden of initially proving a want of" RFC for SGA, but that at Step 5, the ALJ must prove plaintiff has the RFC for SGA.  Plaintiff appears to argue the ALJ cannot simply elicit testimony from a qualified VE as to jobs plaintiff can perform <u>within the RFC determined at Step 4</u>.  Instead, plaintiff contends the ALJ must prove plaintiff retains the RFC to perform the other work listed by the VE.[9]  Plaintiff argues the ALJ did not point to anything in the record showing plaintiff can perform the jobs cited by the ALJ.

The Commissioner agrees plaintiff has the burden of disputing his or her RFC, *i.e.*, showing negative evidence of the lack of RFC, at Step 4.  The Commissioner further argues, however, that the ALJ has no burden to provide additional evidence regarding plaintiff's RFC at Step 5.  The Commissioner notes RFC is determined at Step 4, where the burden is on the plaintiff, and that same RFC is then utilized in the past-relevant-work analysis at Step 4 as well as the other-work analysis at Step 5.  The Commissioner concludes that as the ALJ did not have an additional burden at Step 5 to establish a new RFC for plaintiff, he did not fail to meet such a non-existent burden.

Defendant is correct.  An RFC determination is made at Step 4 of the sequential analysis to ascertain whether a claimant is capable of performing his or her past relevant work.  The burden at this point is on the claimant.  Once this determination is made in favor of the claimant, *i.e.* he or she cannot perform their past relevant work, the burden shifts to the Commissioner to show there exists

---

[9] Plaintiff quotes a description of the various burdens set out in *Johnson v. Califano*, 572 F.2d 186 (8th Cir. 1978):

> The claimant has the burden of showing an inability to perform her past occupation due to the medically determinable ailment.  Once she has done so, the burden shifts to the Secretary to show that the claimant can perform some other type of substantial, gainful employment.

a significant number of other jobs in the economy consistent <u>with the RFC determination reached at Step 4</u>.  The ALJ, at Step 5, is not required to present additional evidence regarding the claimant's RFC.  The claimant's RFC determined at Step 4 does not change simply because the burden shifted to the Commissioner to provide evidence of other work the claimant can perform.  There is no obligation to re-evaluate the RFC previously determined.  *See* 68 Fed. Reg. 51, 153, 163 (August 26, 2003).

    A qualified VE is competent to testify as to the type of work available to claimant, considering her age, education, work experience, and physical and mental limitations.  Here, the VE had an opportunity to hear the testimony and review plaintiff's vocational record.  The ALJ presented the VE with a hypothetical individual with the age, educational background, and experience as plaintiff, and who was limited to sedentary work with a sit/stand option.  The VE testified that such an individual could perform the jobs of surveillance system monitor, sedentary, unskilled, SVP 2; taxi cab dispatch, sedentary, semiskilled, SVP 3; and information clerk, sedentary, semiskilled, SVP4.  Plaintiff's representative added additional restrictions to the hypothetical: (1) problems with pain medication, (2) mental confusion – a loss of up to 30% of her attention and concentration, and (3) frequent limited use of hands due to pain and swelling.  The VE opined there would be a 50% reduction in the available job base based on such modification of the hypothetical.  When plaintiff's representative added the restriction that the hypothetical individual would have to lay down for 1-2 hours after working so many hours, the VE opined that accommodation would be unreasonable to expect an employer to make and would essentially eliminate the individual from competitive employment.  When plaintiff's representative added the restriction that the hypothetical individual would miss 1-3 days a month of work due to her condition, the VE again opined that such a requirement would again be an unreasonable

accommodation and would essentially eliminate the individual from competitive employment. These additional limitations, however, were not adopted by the ALJ, nor were they included in the RFC finding. The Commissioner met her burden at Step 5 as to the availability of other work.

Plaintiff also appears to argue the ALJ's finding as to plaintiff's RFC at Step 4 is not supported by substantial evidence because the only "evidence" the ALJ referred to in making his RFC determination were supposed inconsistencies in plaintiff's testimony. Plaintiff argues the ALJ's RFC finding cannot be supported solely by his credibility rulings.

While the ALJ, in his decision, did initially address what he found to be inconsistencies in the record and in plaintiff's testimony which was relevant as to plaintiff's credibility, the ALJ also reviewed what he found to be inconsistencies in the medical records. The ALJ addressed plaintiff's medications and their lack of side-effects and plaintiff's activities of daily living prior to finding plaintiff retained the RFC for sedentary work with the ability to alternate between sitting and standing. The ALJ cited plaintiff's ability to lift and her treating physician's statement that her condition is stable on her medications as support for his RFC determination. The ALJ's written opinion reflects he did not merely rely on credibility determinations as the sole support for his RFC finding. Further, review of the record shows the RFC finding is sufficiently supported by the medical evidence, though inconsistent with plaintiff's testimony.

Plaintiff next argues the ALJ's determination that plaintiff's allegations were not entirely credible is not supported by substantial evidence. Specifically, plaintiff argues the purported inconsistencies the ALJ found in her testimony were not inconsistencies at all. The inconsistencies cited by the ALJ in his decision were (1) plaintiff's failure to report income from 1996 to 1999 even though she acknowledged working until October 1999, and (2) plaintiff's testimony that her earnings were too low to require the filing of taxes for those years despite her former employer's

testimony that she was a salaried employee earning $40,000 a year up until 1997 and continued to work for her until November 2000 in an office job on a contract basis. Plaintiff presents explanations for the inconsistencies noted by the ALJ and maintains that as the inconsistencies failed "to possess any substance," the ALJ failed to carry his burden of articulating logical reasons as to why he found plaintiff's testimony was not credible.

The ALJ, based on the record and the testimony at the hearing, however, found the inconsistencies to exist. The fact that plaintiff presents, in this appeal, possible explanations for the perceived inconsistencies, does not warrant reversal. The possibility of another explanation of the testimony does not change the fact that the ALJ found plaintiff's testimony questionable based on the evidence and testimony presented to him. The "substantial evidence" burden on the ALJ is not great, *i.e.*, is less than a preponderance,[10] and the ALJ's determination that certain inconsistencies eroded plaintiff's credibility, and his finding that plaintiff's allegations regarding her limitations were not totally credible for those reasons, was not the sole basis for his RFC finding or the determination that plaintiff can perform other work that exists in the economy. Plaintiff has not presented a sufficient basis for reversal and remand.

## IV.
## RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of disability benefits be AFFIRMED.

---

[10] Substantial evidence is simply "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

V.
INSTRUCTIONS FOR SERVICE

The District Clerk is directed to send a copy of this Report and Recommendation to plaintiff's attorney of record and to the Assistant United States Attorney by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 31st day of May 2006.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

* **NOTICE OF RIGHT TO OBJECT** *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation. Service is complete upon mailing, Fed. R. Civ. P. 5(b), and the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed**. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).